THIGPEN v. COOPER

[225 N.C. App. 798 (2013)]

———

JEFF L. THIGPEN, ET. AL., PLAINTIFFS

v.

ROY A. COOPER, III, ATTORNEY GENERAL AND THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA12-582

Filed 5 March 2013

**Civil Rights—constitutionality of marriage statutes—defendants not 42 U.S.C. § 1983 people**

The trial court properly granted defendants' motion to dismiss a 42 U.S.C § 1983 claim alleging that three North Carolina marriage statutes violated plaintiffs' constitutional rights. The Supreme Court of the United States has held that a State is not a person within the meaning of 42 U.S.C § 1983. Likewise, Attorney General Cooper was not a person within the meaning of 42 U.S.C § 1983 since he was not shown to have played a role in enforcing the statutes, thereby having engaged in an ongoing constitutional violation. Moreover, the trial court was not required, under these circumstances, to have allowed plaintiffs to join additional defendants.

Appeal by plaintiffs from order entered 5 April 2012 by Judge Judson D. DeRamus, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 11 October 2012.

*Smith, James, Rowlett & Cohen, LLP, by Norman B. Smith, for plaintiffs-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Valerie L. Bateman and Assistant Attorney General Susannah P. Holloway, for defendants-appellees.*

GEER, Judge.

Plaintiffs Jeff L. Thigpen, Reverend Randall J. Keeney, Reverend Julie Peeples, Reverend Dr. Daniel G. Koenig, Mary Jamis, Starr Johnson, Frank L. Benedetti, Thomas G. Trowbridge, Carolyn S. Weaver, and Alan Brilliant appeal from the trial court's order dismissing their declaratory judgment action alleging that three North Carolina marriage statutes violate their constitutional rights to free exercise of religion and separation of church and state. On appeal, plaintiffs contend that the trial court erred in concluding (1) that defendant Attorney General Roy A. Cooper, III, sued only in his official capacity, was not a proper defendant under 42 U.S.C. § 1983 and (2) that plaintiffs lacked standing to pursue their federal constitutional claims.

We hold that under the controlling standard set out in *Ex Parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), plaintiffs failed to name a proper defendant for purposes of their § 1983 claims. The trial court, accordingly, did not err in granting defendants' motion to dismiss. We do not reach the parties' arguments regarding standing.

## Facts

On 8 December 2011, plaintiffs filed an action against defendant Attorney General Cooper in his official capacity, challenging the constitutionality of marriage statutes N.C. Gen. Stat. §§ 51-1 and 51-6. Plaintiffs amended their complaint as a matter of right on 28 December 2011. The plaintiffs include (1) the Register of Deeds for Guilford County; (2) three ministers who do not wish to have the marriages they perform licensed and registered, two of whom also are willing to solemnize the marriages of same-sex couples; (3) same-sex domestic partners who desire to have a ceremonial, non-religious marriage registered in the state; (4) same-sex domestic partners who desire to have a ceremonial, religious marriage registered in the state; (5) a heterosexual couple who desired to have a religious ceremonial marriage, but were unwilling to be married pursuant to a state issued license because they both were permanently and totally disabled and were receiving Medicaid benefits that would be cut off if they married

**THIGPEN v. COOPER**

[225 N.C. App. 798 (2013)]

pursuant to a state license;[1] and (6) an unmarried, heterosexual man who may wish to marry a woman in the future, but who does not wish to participate in any type of state-required ceremony.

On 6 January 2012, defendant Attorney General Cooper filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. On 8 February 2012, the trial court entered an order allowing plaintiffs to again amend their complaint. In their second amended complaint, plaintiffs added the State of North Carolina as a defendant and challenged the constitutionality of N.C. Gen. Stat. § 51-7, as well as N.C. Gen. Stat. §§ 51-1 and 51-6.

In relevant part, N.C. Gen. Stat. § 51-1 (2011) provides:

A valid and sufficient marriage is created by the consent of a male and female person who may lawfully marry, presently to take each other as husband and wife, freely, seriously and plainly expressed by each in the presence of the other, either:

(1) a. In the presence of an ordained minister of any religious denomination, a minister authorized by a church, or a magistrate; and

b. With the consequent declaration by the minister or magistrate that the persons are husband and wife; or

(2) In accordance with any mode of solemnization recognized by any religious denomination, or federally or State recognized Indian Nation or Tribe.

N.C. Gen. Stat. § 51-6 (2011) provides in relevant part:

No minister, officer, or any other person authorized to solemnize a marriage under the laws of this State shall perform a ceremony of marriage between a man and woman, or shall declare them to be husband and wife, until there is delivered to that person a license for the marriage of the said persons, signed by the register of deeds of the county in which the marriage license was issued or by a lawful deputy or assistant. There must be at least two witnesses to the marriage ceremony.

1. Plaintiffs assert in their brief that plaintiff Burl S. Brinn, Jr. is now deceased.

Finally, N.C. Gen. Stat. § 51-7 (2011) provides:

> Every minister, officer, or any other person autho-
> rized to solemnize a marriage under the laws of this
> State, who marries any couple without a license being
> first delivered to that person, as required by law, or after
> the expiration of such license, or who fails to return
> such license to the register of deeds within 10 days after
> any marriage celebrated by virtue thereof, with the cer-
> tificate appended thereto duly filled up and signed, shall
> forfeit and pay two hundred dollars ($200.00) to any
> person who sues therefore, and shall also be guilty of a
> Class 1 misdemeanor.

In their second amended complaint, plaintiffs alleged that the ceremonial solemnization of marriage is either a sacrament or a fundamentally important religious exercise for all religions and, therefore, the freedom of religious marriage celebration is protected under the federal and state constitutions. Plaintiffs alleged that "[p]ersons wishing to marry also have the constitutional right not to participate in a religious ceremony of marriage or any marriage ceremony at all."

Plaintiffs asserted that N.C. Gen. Stat. §§ 51-1, 51-6, and 51-7 interfere with heterosexual couples' right to marry by requiring, without any compelling state interest, (1) a ceremonial marriage performed by a magistrate, pastor, priest, or rabbi, and (2) that the marriage be licensed and registered. With respect to same sex couples, plaintiffs alleged that the State lacked any compelling governmental interest in prohibiting or requiring that the marriage of same sex couples be licensed or registered.

The complaint alleged with respect to pastors, priests, and rabbis that the State acted unconstitutionally in requiring them to act as an agent of the State in performing marriage ceremonies and participating in the submission of the state-granted license for the marriage because such requirements amount to the establishment of religion. The complaint further alleged that it is unconstitutional to require individuals to participate in a ceremony prescribed by the State and to participate in the licensing of marriages since that violates freedom of religion. Finally, the complaint alleged that it is unconstitutional for the State to make it unlawful for a pastor, priest, or rabbi to solemnize the marriage of same-sex couples.

The complaint summed up its contention:

> In order adequately and fully to protect the personal lib-
> erty and religious freedom of citizens of North Carolina
> and the United States, there must be a de-coupling and
> disentanglement of the state from the personal and reli-
> gious institution of marriage. The institution of marriage
> should be solely in the dominion of citizens and their
> religious and secular organizations, except that the
> state should be permitted to carry out prohibitions of
> marriage for infancy, insanity, bigamy or polygamy, and
> incest, and marriage as a result of fraud, duress, joke, or
> mistake; and the state should be permitted to adjudicate
> rights relating to support, child custody, and property in
> connection with marriages and their dissolution.

Based on these allegations, plaintiffs contended that the statutes
interfered with the freedom of religion and constituted a state estab-
lishment of religion in violation of Article 1, § 13 of the North
Carolina Constitution and the First Amendment to the United State
Constitution. Plaintiffs further contended that the marriage statutes
deprived them of personal liberty in violation of Article 1, § 19 of the
North Carolina Constitution and the Fourteenth Amendment of the
United States Constitution. Plaintiffs asserted their First and
Fourteenth Amendment claims under 42 U.S.C. § 1983. Plaintiffs
sought only a declaratory judgment that the statutes violated their
constitutional rights and did not seek damages or injunctive relief.

On 24 February 2012, defendants moved to dismiss plaintiffs' sec-
ond amended complaint under Rules 12(b)(1), (2), and (6). Defend-
ants asserted that sovereign immunity barred plaintiffs' § 1983 and
state constitutional claims against the State. Defendants further
asserted that under *Will v. Michigan Dep't of State Police*, 491 U.S.
58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), and *Corum v. Univ. of
N.C.*, 330 N.C. 761, 413 S.E.2d 276 (1992), Attorney General Cooper
was not a proper defendant for plaintiffs' § 1983 or state constitu-
tional claims because plaintiffs had not alleged that he had partici-
pated in any unconstitutional acts. Finally, defendants argued that
certain of the plaintiffs lacked standing because they had not alleged
any immediate or threatened injury.

On 5 April 2012, the trial court entered an order granting defend-
ants' motion to dismiss. The order provided in relevant part:

Plaintiffs have not alleged any waiver of sovereign immunity by either defendant and have not alleged that the Defendant Attorney General has taken or threatened to take any particular action against any of them pursuant to any of those provisions of Chapter 51. Plaintiffs seek no monetary damages or injunctive relief.

Plaintiffs timely appealed the order to this Court.

## Discussion

In their brief,[2] plaintiffs abandon their state constitutional claims in light of "the passage of the constitutional amendment on May 9, 2012, outlawing same-sex marriages and domestic unions." Consequently, only plaintiffs' federal constitutional claims brought under § 1983 are before this Court. We review de novo the trial court's grant of defendants' motion to dismiss pursuant to Rule 12(b)(6). *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 429 (2007).

In relevant part, § 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

(Emphasis added.) Thus, "[t]he text of section 1983 permits actions only against a 'person.'" *Corum*, 330 N.C. at 771, 413 S.E.2d at 282.

Here, plaintiffs have sued both the State and an official of the State, Attorney General Cooper. The question is whether either the State or Attorney General Cooper is a "person" for purposes of

---

2. We note that plaintiff's brief does not include a statement of grounds for appellate review. Although the basis for this Court's jurisdiction may be obvious since plaintiff's complaint was completely dismissed, the statement of grounds for appellate review is required by Rule 28(b)(4) of the North Carolina Rules of Appellate Procedure.

§ 1983. The Supreme Court of the United States has held that "a State is not a person within the meaning of § 1983." *Will*, 491 U.S. at 64, 105 L. Ed. 2d at 53, 109 S. Ct. at 2308. Accordingly, plaintiffs cannot assert their § 1983 claims against the State, and the trial court properly granted the State's motion to dismiss those claims.

Turning to plaintiffs' § 1983 claims against Attorney General Cooper, State "officials acting in their official capacity are [not] 'persons' under section 1983 *when the remedy sought is monetary damages.*" *Corum*, 330 N.C. at 771, 413 S.E.2d at 282-83 (emphasis added). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Will*, 491 U.S. at 71 n.10, 105 L. Ed. 2d at 58 n.10, 109 S. Ct. at 2312 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 87 L. Ed. 2d 114, 122 n.14, 105 S. Ct. 3099, 3106 n.14 (1985)).

Here, plaintiffs do not seek monetary damages against Attorney General Cooper; they ask only for a declaration that the challenged statutes violate plaintiffs' federal constitutional rights. The State nonetheless contends that the *Will* exception does not apply because plaintiffs are not seeking injunctive relief. *Will* did not, however, limit its holding to claims for injunctive relief, but rather concluded that a suit for injunctive relief was permissible *because it was an action for prospective relief. Id.* The Court has since clarified that in deciding whether an official capacity claim against a state official is permissible, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 152 L. Ed. 2d 871, 882, 122 S. Ct. 1753, 1760 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 138 L. Ed. 2d 438, 465, 117 S. Ct. 2028, 2047 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).[3]

The Supreme Court has, therefore, determined that actions seeking declaratory relief are permissible when they seek prospective relief against an alleged ongoing violation of federal law, but are not

---

3. While *Verizon Maryland* addressed Eleventh Amendment immunity, "an entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365, 110 L. Ed. 2d 332, 346, 110 S. Ct. 2430, 2437 (1990). Thus, whether a state official acting in his or her official capacity is a person under § 1983 asks whether the state official, acting in his or her official capacity, enjoys Eleventh Amendment immunity. *Id.*

permissible when the declaratory judgment would serve only to expose the State to liability for retrospective damages awards. *See id.* at 646, 152 L. Ed. 2d at 882, 122 S. Ct. at 1760 (holding declaratory relief claim against state officials permissible under Eleventh Amendment because even though it sought "a declaration of the *past,* as well as the *future,* ineffectiveness of the [state] Commission's action, . . . [i]t does not impose *upon the State* 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials' " (quoting *Edelman v. Jordan,* 415 U.S. 651, 668, 39 L. Ed. 2d 662, 676, 94 S. Ct. 1347, 1358 (1974))). *See also Alden v. Maine,* 527 U.S. 706, 747, 144 L. Ed. 2d 636, 673-74, 119 S. Ct. 2240, 2263 (1999) (recognizing that the exception to Eleventh Amendment immunity for suits against state officials in their official capacity "is based in part on the premise that sovereign immunity bars relief against States and their officers in both state and federal courts, and *that certain suits for declaratory or injunctive relief* against state officers must therefore be permitted if the Constitution is to remain the supreme law of the land" (emphasis added)). *Compare Green v. Mansour,* 474 U.S. 64, 73, 88 L. Ed. 2d 371, 380, 106 S. Ct. 423, 428 (1985) (holding declaratory relief claim did not fall within Eleventh Amendment exception when, under unique circumstances of case, only beneficial result for claimants of declaratory judgment would effectively be to grant retrospective damages relief to claimants).[4]

In this case, plaintiffs allege that the three marriage statutes are presently unconstitutional. In their request for a declaration of that unconstitutionality, they are not seeking relief from past wrongs, but rather are seeking relief from these statutes in the future. Plaintiffs are thus seeking relief that is properly characterized as prospective.

The question remains, however, whether plaintiffs have met the second prong of the *Verizon Maryland* test by alleging that Attorney General Cooper is engaged in " 'an ongoing violation of federal law.' " *Verizon Maryland,* 535 U.S. at 645, 152 L. Ed. 2d at 882, 122 S. Ct. at 1760 (quoting *Coeur d'Alene Tribe of Idaho,* 521 U.S. at 296, 138 L. Ed. 2d at 465, 117 S. Ct. at 2047 (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). *See 281 Care Comm. v. Arneson,* 638 F.3d 621, 632 (8th Cir. 2011) (holding, while applying the *Verizon Maryland* test, that because there was no

---

4. This analysis applies to cases seeking only declaratory relief in addition to cases seeking both injunctive and declaratory relief. *See Los Angeles Cnty. Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992) (applying Eleventh Amendment immunity exception to allow suit against California Secretary of State in her official capacity seeking only declaratory judgment that California statute was unconstitutional).

dispute plaintiffs sought prospective relief, "[t]he only question is whether they have alleged that [the] defendant [Attorney General] is, herself, engaged in an ongoing violation of federal law"), *cert. review denied*, ___ U.S. ___, 183 L. Ed. 2d 710, 133 S. Ct. 61 (2012).

The United States Supreme Court in *Ex Parte Young* set out the test for determining the proper defendant for official-capacity actions against state officers challenging the constitutionality of a state statute:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that *such officer must have some connection with the enforcement of the act,* or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

> It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. In some cases, it is true, the duty of enforcement has been so imposed, but that may possibly make the duty more clear; if it otherwise exist it is equally efficacious. The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.

209 U.S. at 157, 52 L. Ed. at 728, 28 S. Ct. at 453 (emphasis added) (internal citation omitted).

The Court in *Ex Parte Young* addressed whether the attorney general for Minnesota had sufficient connection with the enforcement of a railroad rate-setting statute. In concluding that he did, the Court pointed out that after the trial court had enjoined him from enforcing portions of the statute, the attorney general had, in violation of the injunction, in fact brought an action seeking to enforce the statute against one of the railroad companies. *Id.* at 160, 52 L. Ed. at 730, 28 S. Ct. at 454. The Court also pointed to specific statutes providing for the attorney general to prosecute all actions on behalf of the railroad commission and authorizing him to proceed against corporations violating the law, as well as case law vesting the attorney general with authority to enforce all state statutes. *Id.* at 160-61,

52 L. Ed. at 730, 28 S. Ct. at 454. The Court concluded that the power of the attorney general's office as set forth in these statutes and the common law "sufficiently connected him with the duty of enforcement to make him a proper party." *Id.* at 161, 52 L. Ed. at 730, 28 S. Ct. at 454.

Other jurisdictions have applied the *Ex Parte Young* test to determine whether a particular state official may be sued in his or her official capacity in an action seeking a declaration that a state law is unconstitutional. *See, e.g., Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440-41 (7th Cir. 1992) (applying *Ex Parte Young* test to request for declaratory relief under 42 U.S.C. § 1983 and holding attorney general was not proper defendant when "[p]laintiffs ha[d] not articulated any theory under which *Ex parte Young* supports a suit against the Attorney General, who has never threatened the [plaintiffs] with prosecution and as far as we can tell has no authority to do so"); *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980) (en banc) (in action to declare postjudgment garnishment procedures unconstitutional, holding that "[o]n the basis of the reasoning employed in *Ex Parte Young*, . . . [sheriff and prothonotary] are parties to [plaintiff's] dispute over the constitutionality of these rules and properly named as defendants in her suit").

For example, in *Lucchesi v. State*, 807 P.2d 1185, 1187 (Colo. Ct. App. 1990), the plaintiff's complaint included, among other claims, claims under 42 U.S.C. § 1983 challenging the constitutionality of Colorado taxing statutes and seeking only declaratory relief. The court explained that, under *Will*, in order for the official-capacity defendants to be "persons" for purposes of § 1983, "[t]he persons sued . . . must be those whose duties include implementation or enforcement of the statute being assailed." *Id.* at 1194. Applying this test, the Court held that while the state property tax administrator and certain county officials were sufficiently involved in the enforcement of the applicable statutes so as to be proper defendants with respect to the § 1983 claims, the Court could find "no specific responsibility of either the governor or the attorney general with reference to the assessment statutes that would render either of them a proper party to plaintiff's federal claims. Thus, neither the governor nor the attorney general is . . . a proper 'person' under § 1983." *Id.*

Finding these decisions persuasive, we hold that the *Ex Parte Young* test applies to determine whether a State official sued in his official capacity in a § 1983 action for prospective declaratory relief

is a "person" for purposes of § 1983. Plaintiffs, in this case, have suggested that Attorney General Cooper is a proper defendant in a § 1983 action under *Ex Parte Young* because he stands as a surrogate of the State and because, as the complaint alleges, "[i]t is [the Attorney General's] capacity and duty to defend the validity of the statutes of the state of North Carolina."

The *Ex Parte Young* Court, however, rejected precisely these arguments. In laying out the "some connection with the enforcement of the act" test, the *Ex Parte Young* Court quoted its prior decision in *Fitts v. McGhee*, 172 U.S. 516, 43 L. Ed. 535, 19 S. Ct. 269 (1899):

> "In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."

*Ex Parte Young*, 209 U.S. at 157, 52 L. Ed. at 728, 28 S. Ct. at 452-53 (quoting *Fitts*, 172 U.S. at 530, 43 L. Ed. at 541-42, 19 S. Ct. at 274-75).

Under *Ex Parte Young*, plaintiffs must show that Attorney General Cooper has some connection with the enforcement of the marriage statutes alleged to be unconstitutional. Because plaintiffs have not made any showing that Attorney General Cooper plays any role in the enforcement of the statutes, they have failed to demonstrate that the Attorney General has engaged in an ongoing violation

of the federal constitution and, therefore, have not established that he is a "person" for purposes of § 1983.

Plaintiffs also argue that even if Attorney General Cooper is not a proper defendant for § 1983 purposes, rather than dismissing the action, the trial court should have allowed plaintiffs to join a proper § 1983 defendant pursuant to Rule 21 of the North Carolina Rules of Civil Procedure. Rule 21 provides in pertinent part that "[n]either misjoinder of parties nor misjoinder of parties and claims is ground for dismissal of an action; but on such terms as are just parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action."

Plaintiffs have not, however, cited any authority that suggests plaintiffs should be allowed, pursuant to Rule 21 of the Rules of Civil Procedure, to add a new defendant when the only existing defendants have all been properly dismissed. As the Ninth Circuit noted regarding the essentially identical Rule 21 of the Federal Rules of Civil Procedure, "[n]othing on the face of Rule 21 allows substitution of parties." *Sable Commc'ns of Cal., Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 n.13 (9th Cir. 1989) (holding that when plaintiff sued state commission, which could not be sued under § 1983, Rule 21 did not provide means by which plaintiff could add individual members of commission as defendants). Rule 21, by its plain terms, addresses "misjoinder" of parties and not a plaintiff's failure to assert a claim for relief against any of the existing defendants.

In sum, neither the State nor Attorney General Cooper are "persons" for purposes of plaintiffs' claims under § 1983. The trial court was not required, under these circumstances, to allow plaintiffs to join additional defendants. Consequently, the court properly granted defendants' motion to dismiss.

Affirmed.

Judges STEPHENS and McCULLOUGH concur.